UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| IN SPITE TELECOM, LLC, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil Action No. 1:22-cv-12089-IT |
| | * | |
| ROSCITI CONSTRUCTION COMPANY | * | |
| LLC, HUB FIBER LLC, and ANTHONY | * | |
| ROSCITI, JR., | * | |
| | * | |
| Defendants. | * | |

MEMORANDUM & ORDER

October 9, 2024

TALWANI, D.J.

This case involves an alleged breach of an oral contract. Plaintiff In Spite Telecom, LLC

("In Spite") contends that Defendants Anthony Rosciti, Jr., ("Rosciti, Jr."), Hub Fiber LLC

("Hub Fiber"), and Rosciti Construction Company ("Rosciti Construction") (collectively,

"Defendants") have failed to pay Plaintiff In Spite Telecom, LLC ("In Spite") $200,000 for

consulting services performed by In Spite's principal, John Meehan III, on a fiber optic network

project (the "Project") as agreed to by Rosciti, Jr. The court denied Defendants' Motion for

Summary Judgment [Doc. No. 69] in open court, with this memorandum and order to follow.

I.      **Standard of Review**

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate

when "the movant shows that there is no genuine dispute as to any material fact and the movant

is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material when, under

the governing substantive law, it could affect the outcome of the case. Anderson v. Liberty

Lobby, Inc., 477 U.S. 242, 248 (1986); Baker v. St. Paul Travelers, Inc., 670 F.3d 119, 125 (1st

Cir. 2012). A dispute is genuine if a reasonable jury could return a verdict for the non-moving party. Anderson, 477 U.S. at 248.

The moving party bears the initial burden of establishing the absence of a genuine dispute of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). This burden can be satisfied in two ways: (1) by submitting affirmative evidence that negates an essential element of the non-moving party's claim or (2) by demonstrating that the non-moving party failed to establish an essential element of its claim. Id. at 323-24.

Once the moving party establishes the absence of a genuine dispute of material fact, the burden shifts to the non-moving party to set forth facts demonstrating that a genuine dispute of material fact remains. Id. at 314. The non-moving party cannot oppose a properly supported summary judgment motion by "rest[ing] on mere allegations or denials of [the] pleadings." Anderson, 477 U.S. at 256. Rather, the non-moving party must "go beyond the pleadings and by [his or] her own affidavits, or by 'the depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)). Disputes over facts "that are irrelevant or unnecessary" will not preclude summary judgment. Anderson, 477 U.S. at 248.

When reviewing a motion for summary judgment, the court must take all properly supported evidence in the light most favorable to the non-movant and draw all reasonable inferences in the non-movant's favor. Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990). "Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment." Anderson, 477 U.S. at 255.

II.      **Discussion**

A. *Breach of Contract (Count I)*

"Under Massachusetts law, in order to create an enforceable contract, there must be 'agreement between the parties on the material terms of that contract, and the parties must have a present intention to be bound by that agreement.'" In re LP & D, Inc., 622 B.R. 473, 483 (D. Mass. 2020) (quoting Situation Mgmt. Sys., Inc. v. Malouf, Inc., 430 Mass. 875, 878 (2000)). Binding contracts may be either written or oral, subject to the limitations of the statute of frauds, discussed infra II.A.4. JLB LLC v. Egger, 462 F.Supp.3d 68, 87 (D. Mass. 2020). Courts ordinarily treat the existence of a contract as a fact question. APB Realty, Inc. v. Georgia-Pacific LLC, 948 F.3d 37, 40 (1st Cir. 2020) (citing McGurn v. Bell Microprods., Inc., 284 F.3d 86, 93 (1st Cir. 2002)). It is the plaintiff's burden to demonstrate that an agreement between the parties existed. See JLB LLC v. Egger, 462 F.Supp.3d 68, 87 (D. Mass. 2020).

Defendants make three general arguments in support of their claim that no agreement was made: (1) the parties to the agreement are either unclear or incorrect; (2) the terms of the agreement are not sufficiently definite; and (3) if an agreement existed, it fails for lack of performance. The court addresses each argument in turn.

1.      The Parties to the Agreement

a.      In Spite

Defendants contend that In Spite cannot show that it was a party to the contract, if such a contract existed. Def.'s Mem. 12 [Doc. No. 70]. They argue that no Defendant was aware that Meehan was acting for In Spite, and point out that Meehan did not correspond about the Project from his In Spite email address until he submitted the Invoice for his work. Id. at 12-13.

In Spite responds that there was a valid meeting of the minds between Meehan and Rosciti, Jr., that Meehan assigned the contract to In Spite, and that the change in the business structure for Meehan's consulting business to a limited liability company does not render the agreement unenforceable by In Spite. Mem. of In Spite Telecom LLC's in Opp. to Def.'s Mot. for Summ. J. ("Pl.'s Opp.") 8-9 [Doc. No. 108].

The undisputed evidence is that any contract was entered into by Meehan, and not In Spite, where the contract was purportedly entered into in 2017, and Meehan formed In Spite, a limited liability company, in October 2019. Pl.'s Resp. to Def.'s Statement of Undisputed Facts ("Pl.'s Resp. SUMF") ¶¶ 33-38 [Doc. No. 107]. As to the assignment, Meehan states by affidavit that he formed In Spite as part of a change in structure for his consulting business, and that he assigned the rights and benefits of the contract at issue to In Spite following its formation. Pl.'s App'x, Ex. 19 (Meehan Aff.) [Doc. No. 106].

Defendants object to the affidavit on the ground that it is not credible, self-serving, and conclusory. Def's Reply Mem. in Response to Pl.'s Objection to Def.'s Mot. for Summ. J. ("Def.'s Reply") 8-9 [Doc. No. 109]. But although Defendants contend that "not once has the alleged assignment been mentioned through depositions and exchange of discovery," id. at 9, they point to no interrogatory or deposition question posed that Meehan or In Spite answered in an incomplete, false, or misleading manner. Accordingly, the court credits Meehan's affidavit testimony for purposes of summary judgment.

At the same time, the court acknowledges that the Complaint makes no mention of the assignment, and instead refers to actions of Meehan, undertaken in his personal capacity prior to In Spite having come into existence, as actions of In Spite. See e.g. Am. Compl. ¶ 9 [Doc. No. 21] ("Plaintiff is experienced in the purchase, development, and installation of conduit systems

for fiber optic cables"); <u>id.</u> ¶ 10 ("In or around March 2017, Plaintiff and Defendants entered into an Agreement concerning the Project"); <u>id.</u> ¶ 14 ("Between March 2017 and July 2021, Plaintiff provided Defendants with services pursuant to the Agreement… "). But where this error appears to be only sloppy draftsmanship (using a predecessor's name for the current party) and Defendants have argued no prejudice caused by the drafting error, the proper remedy is to permit amendment of the Complaint, not to grant summary judgment. Cf. Fed. R. Civ. P. 15(b)(1) (even during trial, the court "should freely permit an amendment when doing so will aid in presenting the merits and the objecting party fails to satisfy the court that the evidence would prejudice that party's action or defense on the merits"). In sum, the court will not grant summary judgment on this ground, but will allow Plaintiff to promptly move for leave to file an amended complaint to add Meehan as a party and/or to clarify the allegations as to the purported assignment.

   b. Rosciti Construction

  Plaintiff has named Rosciti, Jr., Rosciti Construction, and Hub Fiber as Defendants. Am. Compl. ¶¶ 2-4 [Doc. No. 21]. Plaintiff alleges that both entities are limited liability companies and that Rosciti is a member and manager of each. <u>Id.</u> ¶¶ 2-3, 5-6. On summary judgment, Defendants contend that Rosciti Construction has been improperly included in this litigation. Def's Mem. at 21. They argue that Rosciti Construction never engaged In Spite or Meehan for any services, that no services were provided to Rosciti Construction by In Spite or Meehan, and that Rosciti Construction was not involved in the Project. <u>Id.</u> at 21-22.

  In support, Defendants submitted an affidavit of Anthony Rosciti, Sr. Def.'s App'x 198-200 [Doc. No. 68]. In his affidavit, Rosciti Sr. states that he owns Rosciti Construction with his brother, Henry Rosciti, that Rosciti Construction never engaged In Spite or Meehan to perform any services for Rosciti Construction, and that Rosciti Construction provided no services to the

Project. Id. ¶¶ 1-3. He further stated that Rosciti Construction was not aware of and did not authorize any services to be performed for Rosciti Construction by In Spite or John Meehan with regard to the Project. Id. ¶ 4.

This Affidavit creates a disputed fact but does not resolve the issue. For one thing, Defendants' Rule 7.1 Disclosure Statement ¶ 1 [Doc. No. 7] contradicts the Affidavit, stating that Rosciti Construction has "two (2) members, which include: Anthony Rosciti, Sr., a citizen of the State of Rhode Island and Anthony Rosciti, Jr., a citizen of the State of Rhode Island." Additionally, Rosciti Construction's filings with the Massachusetts Secretary of State as of at least 2022, when this lawsuit was filed, list Anthony Rosciti, Jr. as the individual authorized to execute, acknowledge, deliver, and record any recordable instrument purporting to affect an interest in real property on behalf of Rosciti Construction. See Secretary of the Commonwealth of Massachusetts Corporations Division, corp.sec.state.ma.us/corpweb/CorpSearch/ CorpSearch.aspx (last visited October 9, 2024).

The record also contains evidence from which a jury could find that Rosciti, Jr., accepted performance on behalf of Rosciti Construction. Plaintiff has presented evidence that Meehan and Rosciti, Jr., met on September 1, 2021, and Rosciti, Jr., requested that Meehan accept a reduced payment of $200,000 (from $300,000), and submit an invoice to Rosciti Construction's comptroller. Pl.'s Resp. SUMF ¶¶ 38, 56, 58-59 [Doc. No. 107] (citing Meehan deposition testimony).

On September 2, 2021, Meehan (from his In Spite email address) sent Rosciti, Jr., an Invoice for $200,000 for "Engineering and Project Management Service for Boston" addressed to Rosciti Construction. Id. ¶¶ 23-24, 26-27. Over the next year, Meehan requested that Rosciti, Jr., pay the Invoice many times via text message. Rosciti, Jr., responded in various ways,

including that he would "look into" payment, would "see what's going on," had been sick and would check in later, was "going crazy with travel" and out of the office, and that he would "see what I have coming in." Pl.'s App'x, Ex. 3 (Text Messages) 29-31, 34, 47. At no point in these text messages did Rosciti, Jr., complain that the Invoice was improperly addressed. To the contrary, he told Meehan that payment was coming numerous times, with assurances like "I'm not going to screw you," "I'm working on it," "I'm not telling you you are not getting your money," "I have it. I'll send the check," "I never said I would not pay you," "once I [close] I will square up with you," "I will pay you soon," "I'm closing on a property in 30 days. I'll pay you when I close," "I'll figure it out. Don't bust my balls. I'm going to take care of you," "I am waiting to close on my property and I really don't need you to bust my balls. I told you I will pay you," and "I never said I was not paying you."  Id. at 35-37, 41, 43, 50, 53, 56, 60, 64, 75.

Finally, Meehan had reason to understand that Rosciti, Jr., had the authority to enter into agreements on behalf of Rosciti construction where Meehan had worked with Rosciti, Jr., for over 15 years, and had provided work (through other employers) for Rosciti Construction. Pl.'s App'x, Ex. 4 (Meehan Depo.) 87 [Doc. No. 106].

Given the disputed record regarding Rosciti Construction's relationship with Rosciti, Jr., and taking the facts in the light most favorable to the Plaintiff, the court finds that Rosciti Construction should remain in the litigation and summary judgment in its favor is not warranted.

### 2.    The Agreement's Terms

Defendants assert that In Spite has provided no competent evidence that an agreement was formed because it has pointed to nothing that demonstrates offer and acceptance. Def.'s Mem. 13 [Doc. No. 70]. Defendants contend that In Spite's evidence, including email chains documenting communications and exchanges of work product between Meehan and Rosciti, Jr.,

and the text messages documenting Meehan's attempts to receive payment, "contain nothing even remotely sufficient for a contract to have formed." Id.

Defendants misrepresent In Spite's argument. In Spite does not argue that an offer and acceptance occurred through emails and text messages. Instead, In Spite relies on Meehan's testimony that he formed an oral agreement with Rosciti, Jr., to perform services with respect to the Project. Pl.'s Opp. 9 [Doc. No. 108]. Although the emails and text messages may bolster that testimony, Defendants are not entitled to summary judgment on the ground that the emails and text messages do not themselves amount to an offer and acceptance.

Defendants further argue that no evidence has been offered by In Spite that Meehan reached a meeting of the minds with Rosciti, Jr., with respect to the scope, duration, or cost of services, or the manner of payment, all of which are essential to determining whether an agreement was formed. Def.'s Mem. 13 [Doc. No. 70]. But the summary judgment record contains sufficient information from which a jury could find these terms.

Meehan testified during his own deposition that he and Rosciti, Jr., had a clear agreement that he would provide consulting services for the Project and would be paid $300,000 (later reduced to $200,000). Pl.'s App'x, Ex. 4 (Meehan Depo.) 87 [Doc. No. 106]. Meehan had the following exchange with Defendants' counsel during his deposition:

> Q: Did you tell Rosciti Construction your services would cost $300,000?
> A: Anthony gave me that number.
> Q: Okay. Did you receive that number in writing?
> A: In a text message.
> Q: Okay. And in return for the payment on $300,000, you were to provide a spreadsheet in consulting with respect to the 728 cable wire or cable fiber?
> A: Everything associated with it. Anything Anthony asked for, I did it.

Pl.'s App'x, Ex. 4 (Meehan Depo.) 87 [Doc. No. 106]. Meehan also testified that Rosciti, Jr., sent him a text saying "[h]elp me sell this network, whatever you can do, and it will be between 200- and $300,000 coming your way at the eventual sale." Id. at 35.

Rosciti, Jr., conceded that he did have an agreement of some kind with Meehan, but differed as to the terms. Pl.'s App'x, Ex. 5 (Rosciti Depo.) 15, 107 [Doc. No. 106].

While there is a factual dispute as to whether an agreement with definite terms was reached between Meehan and Rosciti, and, if an agreement was reached, what its terms were, that dispute must be resolved by a jury. For purposes of summary judgment, where Meehan's version of the events must be credited, the evidence is sufficient for a jury to find that Rosciti, Jr., entered into a $300,000 (later reduced to $200,000) contract for Meehan to perform work related to the Project, that was not dependent on Meehan securing a buyer and facilitating the sale.

### 3. In Spite's Performance

Finally, Defendants contend that, if an agreement existed, there is no evidence that In Spite performed as required by the contract. Def.'s Mem. 14 [Doc. No. 70]. "Specifically, In Spite materially breached the [agreement] when it failed to secure a buyer for the Project." Id. The record is undisputed that the fiber network was eventually sold by Hub Fiber in 2021 for $5.5 million to a buyer not secured by In Spite. Pl.'s Resp. SUMF ¶ 52 [Doc. No. 107]. In Spite counters, however, that the agreement was for consulting services to help facilitate the development and eventual sale of the fiberoptic network, not for Meehan to secure a buyer. Pl.'s Opp. 11 [Doc. No. 108]. Plaintiff contends that pursuant to the agreement, Meehan sent Rosciti a spreadsheet titled "1728 Fiber-Boston, Cambridge & Somerville" (the "Spreadsheet") with detailed estimates for work on the Project based on Meehan's expertise developed in iterations throughout the Project. Id. ¶ 18-19. Meehan testified that he spent "several hours over several weeks over years" developing and revising the Spreadsheet. Id. ¶ 20. In Spite alleges that Meehan provided to Rosciti an estimate as to the costs of the development of the conduit

network, including labor, materials, permitting, and police detail breakdowns, as well as advice

on how to best develop the conduit network and tours of the network to potential buyers. Id. ¶¶

21, 40-42.

Where the court has found that the existence of any contract and its terms are factual

questions that must be answered by a jury, whether In Spite performed under the terms of that

contract is also for the jury.

      4.      Statute of Frauds

Defendants argue that, if the court finds that the parties had an agreement, it should also

find that enforcement of the agreement is barred by the statute of frauds. The question is

premature.

Under Massachusetts law, the Statute of Frauds, Mass. Gen. Laws c. 259, § 1, requires

that any contract that cannot be fully performed within one year of its making be reduced to

writing to be enforceable. See Powers v. Bos. Cooper Corp., 926 F.2d 109, 110 (1st Cir. 1991)

("The Supreme Judicial Court has consistently stated that oral contracts for a term of years are

proscribed by the statute of frauds because, by definition, they cannot be performed within a

year"). However, this provision "applies only to contracts which by their terms cannot be

performed within the year. It does not apply to contracts which may be performed within,

although they may also extend beyond, that period." Doherty v. Doherty Ins. Agency, Inc., 878

F.2d 546, 551 (1st Cir. 1989) (quoting Rowland v. Hackel, 243 Mass. 160, 162, 137 N.E. 265

(1922)). "[A]ny understanding that the agreement was not to be performed within one year is to

be absolute and certain, and not to depend on any contingency." Joseph Martin, Inc. v. McNulty,

300 Mass. 573, 577, 16 N.E.2d 4 (1938) (explaining and quoting from Peters v. Westborough, 36

Mass. 364, 367 (1837)). The statute of frauds is an affirmative defense. Fed. R. Civ. P. 8(C)(1).

Thus, it is the Defendants' burden to show that the agreement, by its terms, was impossible to perform within one year. See JLB LLC, 462 F.Supp.3d at 87.

Defendants have failed to meet their burden here. Based on the evidence in the record, the alleged agreement was for an indefinite period. The mere fact that In Spite's services on the Project were likely—or even expected—to take more than a year to complete does not satisfy the statute of fraud's requirement where Defendants have pointed to no evidence showing that the parties' agreement was, by its terms, impossible to complete within one year.

B.   *Implied Covenant of Good Faith and Fair Dealing (Count II)*

Under Massachusetts law, "[t]he covenant of good faith and fair dealing is implied in every contract," UNO Rests., Inc. v. Boston Kenmore Realty Corp., 441 Mass. 376, 385 (2004), and provides that "neither party shall do anything that will have the effect of destroying or injuring the rights of the other party to receive the fruits of the contract," Anthony's Pier Four, Inc. v. HBC Associates, 411 Mass. 451, 471-72, 583 N.E.2d 806 (1991). While the implied covenant may not "be invoked to create rights and duties not otherwise provided for in the existing contractual relationship," UNO Rests., 441 Mass. at 385–86, "the essential inquiry is whether the challenged conduct conformed to the parties' reasonable understanding of performance obligations, as reflected in the overall spirit of the bargain, not whether the defendant abided by the letter of the contract in the course of performance." Doe v. Brandeis Univ., 177 F. Supp. 3d 561, 612 (D. Mass. 2016).

Defendants argue that In Spite's implied covenant claim cannot stand because no enforceable agreement existed between the parties. Given that the court has found that resolution of the existence of a contract is inappropriate on summary judgment, there is no basis for dismissal of the implied covenant claim at this stage.

C.    *Unjust Enrichment (Count III)*

"Unjust enrichment provides an equitable stopgap for occasional inadequacies in contractual remedies at law by mandating that '[a] person who has been unjustly enriched at the expense of another is required to make restitution to the other'" Mass. Eye & Ear Infirmary v. QLT Phototherapeutics, Inc., 399 F.3d 360, 374 (1st Cir. 2005) (quoting Fox v. F & J Gatozzi Corp., 41 Mass. App. Ct. 581, 589 (1996)). "A plaintiff asserting a claim for unjust enrichment must establish not only that the defendant received a benefit, but also that such a benefit was unjust, 'a quality that turns on the reasonable expectations of the parties.'" Metro. Life Ins. Co. v. Cotter, 464 Mass. 623, 644 (2013) (quoting Global Inv'rs Agent Corp. v. Nat'l Fire Ins. Co., 76 Mass. App. Ct. 812, 826, 927 N.E.2d 480 (2010) ). To succeed on a claim of unjust enrichment, a plaintiff must show "(1) a benefit conferred upon the defendant by the plaintiff; (2) an appreciation or knowledge by the defendant of the benefit; and (3) acceptance or retention by the defendant of the benefit under the circumstances would be inequitable without payment for its value." Mass. Eye & Ear Infirmary v. QLT Phototherapeutics, Inc., 552 F.3d 47, 57 (1st Cir. 2009) (citation omitted).

Defendants seek summary judgment on In Spite's unjust enrichment claim on the ground that In Spite has failed to show that Defendants received any benefit from the alleged services it performed. Specifically, Defendants argue that In Spite has not demonstrated that any money or property was retained by Defendants, because the Spreadsheet was sent to Rosciti, Jr., at his email address at TruAccess Network (another entity that is not a party this litigation where Rosciti, Jr., is a principal) and because In Spite has provided no evidence of the Spreadsheet's value. Def.'s Mem. 17 [Doc. No. 70].

The court finds Rosciti, Jr.'s use of the TruAccess email does not foreclose the claims here where there is evidence from which a jury could find that Rosciti, Jr., expected Meehan to perform consulting services, communicated with Meehan about the Project multiple times, that Meehan gave tours of the network to potential buyers, Pl.'s App'x, Ex. 5 (Rosciti Depo.) 130, 132, 143 [Doc. No. 106], that the Spreadsheet Meehan produced for Rosciti took "several hours over several weeks over years" to create, and that it was repeatedly adjusted based on developments in the Project and its materials. Id., Ex. 4 (Meehan Depo.) 85 [Doc. No. 106].

Defendants insist that "In Spite is burdened with demonstrating that a benefit was retained by Defendants," but where In Spite has made the above showing, it is Defendants' burden as the moving party on summary judgment to establish the absence of a genuine issue of material fact about that benefit. They have failed to do so. Accordingly, the court denies Defendants' summary judgment motion as to Count III.

      D.    *M.G.L. c. 93A (Count IV)*

      1.  Legal Standard

"To state a claim under the consumer protection statute, [Mass. Gen. Laws] c. 93A, § 9, a plaintiff must allege facts sufficient to establish four elements:"

> first, that the defendant has committed an unfair or deceptive act or practice; second, that the unfair or deceptive act or practice occurred 'in the conduct of any trade or commerce;' third, that the plaintiff suffered an injury; and fourth, that the defendant's unfair or deceptive conduct was a cause of the injury.

Rafferty v. Merck & Co., Inc., 479 Mass. 141, 161, 92 N.E.3d 1205 (2018). For a business plaintiff to state a claim under chapter 93A, § 11, it generally must plead the additional fifth element that there was a "commercial transaction" between itself and a defendant. Id. at 162 n.7.

In determining whether an act is "unfair" within the meaning of the statute, courts consider "(1) whether the practice . . . is within at least the penumbra of some common-law,

statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; [and] (3) whether it causes substantial injury to consumers. . . ." Massachusetts Eye & Ear Infirmary v. QLT Phototherapeutics, Inc., 412 F.3d 215, 243 (1st Cir. 2005) (quoting PMP Assocs., Inc. v. Globe Newspaper Co., 366 Mass. 593, 596, 321 N.E.2d 915 (1975)).

"Chapter 93A furnishes no definition of what constitutes an unfair act or practice made unlawful" by the statute. Commonwealth v. DeCotis, 366 Mass. 234, 242 (Mass. 1974). "The existence of unfair acts and practices must be determined from the circumstances of each case." 477 Harrison Ave., LLC v. Jace Boston, LLC, 477 Mass. 162, 172 (Mass. 2017) (quoting DeCotis, 366 Mass. at 241)). An act is "deceptive" for these purposes "if it could reasonably be found to have caused a person to act differently from the way he otherwise would have acted." Lowell Gas Co. v. Att'y Gen., 377 Mass. 37, 51, 385 N.E.2d 240 (1979). Specifically, for an act to be deceptive, "(1) there must be a representation, practice, or omission likely to mislead consumers; (2) the consumers must be interpreting the message reasonably under the circumstances; and (3) the misleading effects must be 'material,' that is likely to affect consumers' conduct or decision with regard to a product." Tomasella v. Nestlé USA, Inc., 962 F.3d 60, 72 (1st Cir. 2020) (internal citation omitted).

2. In Spite's c. 93A Claim

Defendants seek summary judgment on In Spite's c. 93A claim on the ground that In Spite is unable to establish that it engaged in trade or commerce under the statute, and therefore lacks standing to bring the claim. They also contend that In Spite has failed to establish that Defendants engaged in unfair methods of competition or perpetrate any deceptive acts or practices. Def.'s Mem. 20 [Doc. No. 70].

14

a.   Standing

To have standing to bring a c. 93A claim under section 11, a claimant must establish that

the alleged unfair or deceptive practices occurred in the conduct of trade or commerce. The

Massachusetts legislature has articulated that trade and commerce:

> [I]nclude the advertising, the offering for sale, rent or lease, the sale, rent, lease
> or distribution of any services and any property, tangible or intangible, real,
> personal or mixed, any security as defined in subparagraph (k) of section four
> hundred and one of chapter one hundred and ten A and any contract of sale of
> a commodity for future delivery, and any other article, commodity, or thing of
> value wherever situate, and shall include any trade or commerce directly or
> indirectly affecting the people of this commonwealth.

M.G.L. c. 93A, § 1(b).

Defendants contend that In Spite has failed to show that it was engaged in trade or

commerce as required by section 11 because "the only evidence [In Spite has] presented thus far

. . . establishes that a non-party representative [Meehan] of another company[1] communicated

with Rosciti[, Jr.,] less than a handful of times pertaining to the Project." Def.'s Mem. 19 [Doc.

No. 70]. In other words, Defendants' standing argument begs the question by assuming that

Meehan's work could not have been performed through In Spite.

While private transactions, such as the private sale of one's home, and intra-enterprise

transactions generally do not fall under "trade or commerce," see 468 Consulting Grp., LLC v.

Agritech, Inc., 99 Mass. App. Ct. 758, 771 n.17 (Mass. App. Ct. 2021), the transaction here was

clearly commercial. Whether Meehan or In Spite performed the consulting services, those

services, which concerned consulting on a fiber optic network project, were commercial in

---

[1] Although Defendants' argument is not clear, Defendants may be basing their argument on the
fact that Meehan used the email of his employer, JBC Utility LLC, for some of his emails with
Rosciti, Jr. But in light of Rosciti, Jr.'s texts stating that he would pay Meehan after receiving In
Spite's invoice, the suggestion that Rosciti, Jr., understood Meehan to have performed the work
at issue on behalf of JBC Utility LLC is frivolous.

nature and therefore satisfy the "trade or commerce" requirement of c. 93A.  Where the court has ruled that Plaintiff has provided evidence from which the court can find that In Spite is a proper party to the contract and that Rosciti, Jr., and Meehan (later, In Spite) were engaged in a business transaction, it will not dismiss the c. 93A claim for lack of standing.

> b.    Fiscal Loss

Defendants further argue that In Spite cannot demonstrate a fiscal loss because there was no enforceable contract given that Rosciti, Jr., "was unaware of In Spite's existence at all pertinent times during the Project and was completely unaware that Meehan, who claims to have been engaged before In Spite was even formed, was attempting to secretly provide services as In Spite." Id. at 19-20. This argument, too, depends on In Spite and Meehan acting as entirely separate entities, which the court has not found.

> c.    Unfair Methods of Competition or Deceptive Acts or Practices

Finally, Defendants contend that In Spite has failed to show that Defendants engaged in any unfair method of competition or perpetrated any deceptive acts or practices. Id. This argument, like Defendants' other c. 93A arguments, is fundamentally an argument about In Spite's position as a party to the contract. "[T]here was no privity of contract between the parties, In Spite has no accounting of their time and cannot identify any benefit conferred to and/or accepted by the Defendants and Rosciti testified that In Spite was never involved in the Project.... . As a result of the complete lack of association and any significant and/or legal relationship between the parties, no unfair method of competition occurred." Def.'s Mem. 21 [Doc. No. 70]. For the same reasons this argument failed above, it fails here.

Accordingly, because Defendants have not established that no disputed material facts exist as to In Spite's M.G.L. c. 93A claim, its motion for summary judgment is denied as to that count.

### III.    Conclusion

For the foregoing reasons, Defendant's <u>Motion for Summary Judgment</u> [Doc. No. 69] is DENIED.

IT IS SO ORDERED

October 9, 2024                                    /s/Indira Talwani
                                                    United States District Judge